IN THE SUPREME COURT OF THE STATE OF DELAWARE

ORDER RE-ESTABLISHING THE §
CRIMINAL JUSTICE COUNCIL §
OF THE JUDICIARY §

Before **STRINE**, Chief Justice.

### **O R D E R**

On the 19th day of August, 2015:

WHEREAS, few matters of public policy are more important to Delawareans than the penalties and rehabilitation opportunities that defendants who commit crimes receive;

WHEREAS, it is impossible as a matter of fiscal reality and our society's values to address the public's need for safety solely by means of lengthy sentences of incarceration;

WHEREAS, the criminal justice system has a responsibility to attempt to afford prisoners an opportunity to address substance abuse, mental health, educational, and vocational problems that may have contributed to their criminal behavior;

WHEREAS, the criminal justice system has a responsibility to use limited resources wisely, and to attempt to allocate rehabilitation resources rationally and equitably, based on sound criteria;

WHEREAS, many offenders receive sentences that permit them to live in the community, and there are only limited resources available to the Bureau of

Community Corrections of the Department of Correction (i.e., "Probation and Parole") to provide supervision and services to these offenders in order to protect the public and attempt to help these offenders avoid committing other crimes;

WHEREAS, to best protect the public and to reduce recidivism, scarce supervision resources must also be deployed rationally and equitably, based on sound criteria relating to the dangerousness of the offender to the public;

WHEREAS, the Judiciary has an important role in determining the allocation of limited rehabilitation and supervision resources, and should do its best to help important state and community partners do their jobs effectively and efficiently;

WHEREAS, in cooperation with these partners, the Judiciary has initiated a variety of innovative approaches to criminal cases, which attempt to address some of the fundamental issues that contribute to criminal behavior;

WHEREAS, to that end, the Judiciary has implemented innovations in "problem-solving" approaches to dealing with offenders with substance abuse problems, offenders with mental health problems, offenders who are military veterans, and offenders who were impressed into criminal conduct by sexual victimization;

WHEREAS, these innovations in problem-solving courts have now gone on for several years, there is valuable experience from them, and it is timely to consider their effectiveness and which of them are worth bringing to full scale;

to develop consistent, predictable, and measurable statewide standards governing their operation; and to ensure that problem-solving courts function in a manner that respects the needs of key agency partners, such as Probation and Parole, and that uses limited supervision and rehabilitation resources prudently;

WHEREAS, these problem-solving courts should genuinely be courts, in the sense that they are an integral part of the courts of Delaware and operate on sensible and effective standards that do not vary depending on the judge handling the matter or the county in which the matter is handled;

WHEREAS, because the problem-solving courts address classes of offenders with similar needs for supervision and rehabilitation regardless of the particular court – be it the Superior Court or the Court of Common Pleas, by way of example – our State should endeavor to implement the best approach to, for example, a "mental health" court, without regard to court jurisdictional lines;

WHEREAS, the utility of collaborating within the Judiciary and with key partners to make the problem-solving courts more effective is merely one illustration of the benefits that could flow from more collaboration on key criminal justice policies within the Judiciary itself;

WHEREAS, this collaboration within the Judiciary and with key partners is also necessary because of the effect these innovative problem-solving efforts have on the resources and time key agency partners have to devote to helping

3

supervise and rehabilitate other criminal defendants, and on the Judiciary's own resolution of criminal matters not assigned to the problem-solving courts;

WHEREAS, the ability to collaborate on these issues is complicated by the proliferation of criminal justice bodies charged with overlapping responsibility to address criminal justice issues (see Exhibit A);

WHEREAS, the sheer number of these bodies makes it difficult for the Judiciary and other Branches to staff them appropriately and to use limited time to address key criminal justice issues effectively;

WHEREAS, the sheer number of these bodies also complicates the ability of appointed members of the Judiciary to consult with their judicial colleagues and to speak for the Judiciary as a whole when they serve on these bodies;

WHEREAS, this lack of coordination can cause the simultaneous employment of different approaches to the same criminal justice policy problem, which may result in similarly situated offenders receiving inequitably different treatment, and inefficiencies for key agency partners whose budgets and staffs are limited;

WHEREAS, it is therefore timely to explore the implementation of measures to focus criminal justice policymaking in a smaller set of key bodies, and to ensure that the judicial representatives on those bodies are able to consult with their colleagues and present input that reflects the best thinking of the Judiciary as a whole;

4

WHEREAS, as with adult offenders, there are limited rehabilitation and supervisory resources to address youth delinquency, so the Judiciary should make good faith efforts to work with key partners to make sure these resources are rationally allocated in an effort to provide juvenile offenders with effective opportunities for rehabilitation and to protect the public;

WHEREAS, to address all these issues, it is useful to involve judges from the key trial courts with the front-line responsibility for criminal justice and to have them play the leading role in addressing these issues;

WHEREAS, on October 15, 2014, the Supreme Court established the Criminal Justice Council of the Judiciary by Administrative Directive 186 to address the issues set forth above;

WHEREAS, Administrative Directive 186 was rescinded in connection with the adoption of the consolidated Operating Procedures for the Delaware Judicial Branch; and

WHEREAS, the Supreme Court wishes to re-establish the Criminal Justice Council of the Judiciary.

NOW, THEREFORE, IT IS DIRECTED, with the unanimous approval of the members of the Supreme Court under Delaware Constitution, Art. IV, 13(1), that:

1. The Criminal Justice Council of the Judiciary is hereby re-established.

2. The membership of the Council shall be as follows:

The Honorable William C. Carpenter, Jr., Chairman
The Honorable Jan R. Jurden, Co-Chairwoman

The Honorable William L. Chapman, Jr.

The Honorable Kenneth S. Clark, Jr.

The Honorable Robert B. Coonin

The Honorable Carl C. Danberg

The Honorable Alicia B. Howard

The Honorable Vivian L. Medinilla

The Honorable Mardi F. Pyott

The Honorable Andrea L. Rocanelli

The Honorable Paula T. Ryan

The Honorable Robert H. Surles

The Honorable Paul R. Wallace

The Honorable William L. Witham, Jr.

The Honorable Alan G. Davis

3.  The initial mandate of the Council shall be as follows:

    A.  Problem-Solving Courts

        i.   To identify which of the so-called "problem-solving courts" have demonstrated sufficient utility in terms of improving public safety, the rehabilitation of offenders, and the efficiency of the judicial system to warrant continuation;

        ii.  As to problem-solving courts that are continuing in operation, to develop statewide standards, rules of procedure, and outcome measures to govern their operation and measure their performance.  Such statewide standards shall ensure that the problem-solving courts (e.g., Drug Courts, Mental Health Courts, and Veterans' Courts) operate based on the same standards regardless of the county or court in which a case is held, unless there are sound, articulated, and efficient reasons

6

for variation. These standards, rules of procedure, and outcome measures shall be designed to enable any judge of a court, any experienced practitioner, and key agency partners to understand how matters in the problem-solving courts are to be handled and what class of cases and offenders are eligible for inclusion;

iii. In identifying and developing the standards for problem-solving courts continuing in operation, the Council shall examine empirical evidence not only from the various approaches used by our courts to date, but also empirical evidence and other research and scholarship from similar efforts in other states;

iv. In identifying and developing these standards, the Council shall also seek input from other key partners to ensure that the problem-solving courts operate in a manner that helps other agency partners in doing their critical work efficiently. By way of example, the Council shall consider how the courts should schedule matters before the problem-solving courts in a manner that is efficient for Probation and Parole and treatment providers so that they can make the best use of their scarce time; and

v. In identifying and developing these standards, the Council shall also consider, with input from agency partners, how to ensure

7

that the problem-solving courts do not inhibit Probation and Parole's ability to supervise other defendants effectively or deny other defendants who need rehabilitation resources equitable access.

B.    Overall Criminal Justice Coordination

    i.    The Council shall identify the most effective policy body in which overall criminal justice policy should be addressed by the Judiciary in cooperation with the other Branches;

    ii.    The Council shall identify means to consolidate, eliminate, or revise the mandate of existing criminal justice policy bodies that have overlapping or inconsistent mandates, and to engage with the other Branches in a good faith effort to reduce the number of related bodies and to focus policymaking in fewer forums; and

    iii.    The Council shall also identify policies and procedures to ensure that the Judiciary's members on those bodies collaborate with their judicial colleagues in advance of meetings of whatever criminal justice bodies persist so as to ensure that the Judicial Branch's members on those bodies speak, to the extent possible, for the Judiciary as a whole.

C.    Juvenile Justice

    i.    Problem-Solving Courts

8

a. The Council shall identify which of the problem-solving courts used in the Juvenile Justice system have demonstrated sufficient utility in terms of improving public safety, the rehabilitation of delinquent youth, and the efficiency of the judicial system to warrant continuation;

b. As to problem-solving courts that are continuing in operation, to develop statewide standards, rules of procedure, and outcome measures to govern their operation and measure their performance. Such standards shall ensure that problem-solving courts operate based on the same standards regardless of the county in which a case is held, unless there are sound, articulated, and efficient reasons for variation;

c. These standards, rules of procedure, and outcome measures shall be designed to enable any judge of a court, any experienced practitioner, and key agency partners to understand how matters in the problem-solving courts are to be handled and what class of cases and offenders are eligible for inclusion;

d. In identifying and developing the standards to govern any courts that are continuing in operation, the Council shall

9

examine empirical evidence not only from the various approaches used by our courts to date, but also empirical evidence and other research and scholarship from similar efforts in other states; and

e. In identifying and developing these standards, the Council shall also seek input from other key partners to ensure that the problem-solving courts operate in a manner that helps other agency partners in doing their critical work efficiently. By way of example, the Council shall consider how the courts should schedule matters before the problem-solving courts in a manner that is efficient for the Division of Youth Rehabilitative Services ("YRS") and treatment providers so that they can make the best use of their scarce time.

ii. Judicial Branch Juvenile Justice Policy Coordination

a. The Council shall identify the most effective policy body in which overall juvenile justice policy should be addressed in cooperation with the other Branches;

b. The Council shall identify means to consolidate, eliminate, or revise the mandate of existing juvenile justice policy bodies that have overlapping or inconsistent mandates, and to engage with the other Branches in a

10

good faith effort to reduce the number of related bodies and to focus policymaking in fewer forums; and

    c.    The Council shall also identify policies and procedures to ensure that the Judiciary's members on those bodies collaborate with their judicial colleagues in advance of meetings of whatever juvenile justice bodies persist so as to ensure that the Judicial Branch's members on those bodies speak, to the extent possible, for the Judiciary as a whole.

  iii.  <u>Cooperation With Youth Rehabilitation Services In Optimizing The Allocation Of Placement Funds For Delinquent Youth</u>

    a.    The Council shall engage with the YRS to identify means to provide the Family Court and the YRS with better empirical data regarding the comparative benefits and costs of placements for delinquent youth for their use in making placement decisions. The goal of the Council shall be to better enable the Family Court and the YRS to deploy the limited resources available for the placement and supervision of delinquent youth in the manner most likely to protect the public and to provide rehabilitation opportunities for youth offenders.

D.    <u>Work Time Line</u>

11

i.  The Council shall present its initial findings to the Chief Justice and Presiding Judges, the Supreme Court, and the Administrative Office of the Courts on or before June 15, 2015. To the extent the Council identifies issues that require more time for resolution, the Council shall specify the time frame best suited for resolution of those remaining issues. Likewise, if the Council identifies issues that should be addressed earlier because of the State legislative or budget cycle, or for other reasons, it may make such interim reports as it deems advisable;

ii. To facilitate the implementation of findings determined by the Judiciary and other Branches to be worthy of adoption as policy, the Council shall accompany its findings with implementing draft rules of procedure, standards of operation, administrative directives, and legislation; and

iii. The Chief Justice may also refer other criminal justice issues to the Council for consideration.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*

Chief Justice

12

cc: The Honorable Jack A. Markell      State Court Administrator
The Honorable Randy J. Holland      Court Administrators
The Honorable Karen L. Valihura      Clerk of the Supreme Court
The Honorable James T. Vaughn, Jr.      Counsel to the Governor
The Honorable Collins. J. Seitz, Jr.      Chair Senate Judiciary Committee
Members of the Judicial Conference      Chair House Judiciary Committee
The Honorable Matthew Denn
The Honorable Brendan O'Neill